IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVONNE WILLIAMS,<br><br>        Plaintiff,<br><br>v.<br><br>ICON CLINICAL RESEARCH, LLC,<br><br>        Defendant. | ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS<br><br>Case No. 2:24-cv-00427-JNP-DAO<br><br>District Judge Jill N. Parrish |

Magistrate Judge Daphne A. Oberg issued a Report and Recommendation (R&R), ECF No. 43, that the court grant defendant ICON Clinical Research, LLC's motion to dismiss, ECF No. 35. Plaintiff Davonne Williams filed an objection to the R&R. ECF No. 44. The court SUSTAINS IN PART and OVERRULES IN PART the objection, ADOPTS IN PART the R&R, and GRANTS IN PART and DENIES IN PART ICON's motion to dismiss.

## BACKGROUND

Williams agreed to participate in a medical research study conducted by ICON in exchange for compensation. He signed an informed consent form, which he asserts to be a contract guaranteeing payment upon completion of the study unless he was disqualified from participation for certain enumerated reasons. On the date that the study was scheduled to begin, the study coordinator informed Williams that he would not be included in the study because a third-party lab had not processed his urine sample in time. Williams alleges that this was a lie and that ICON replaced him due to racial discrimination and because one of the alternates had personal ties with ICON employees.

Williams sued ICON. The operative complaint asserts claims for (1) fraudulent misrepresentation, (2) breach of contract and breach of the implied covenant of good faith and fair dealing, (3) negligence and gross negligence, (4) discrimination in violation of 42 U.S.C. § 1981, (5) retaliation under § 1981, and (6) violation of public policy and promissory estoppel. ICON moved to dismiss the complaint. Magistrate Judge Oberg subsequently issued an R&R recommending that this court grant the motion and dismiss the action with prejudice. Williams filed a number of objections to the R&R.

### ANALYSIS

The court reviews de novo the portions of the R&R to which Williams has objected. *See* FED. R. CIV. P. 72(b)(3). Williams raises the following objections to the R&R.

### I.    OBJECTION TO DISMISSAL OF THE BREACH OF CONTRACT CLAIM

Williams alleges that ICON breached the terms of the consent form contract by excluding him from participating in the medical study for an improper reason. The R&R recommends that this court dismiss the breach of contract claim, reasoning that the contract permits ICON to exclude participants for any reason or no reason at all based on the following language:

> Your participation in this study may be stopped at any time by your study doctor [Ahad Sabet], the Study Sponsor [Gilead Sciences], or health authorities.

> Your study doctor may decide for your medical safety to stop your study drug(s) or take you off the study. You may be taken off the study if your study doctor learns you did not give a correct medical history or did not follow instructions for the study.

ECF No. 35-1 at 17. Subsequent language suggests that participants may be dropped from the study due to circumstances beyond their control, "such as medical reasons or technical problems."

*Id.* Other enumerated reasons for exclusion from the study include "failure to meet scheduled visits" and noncompliance with "ICON House Rules." *Id.*

Williams objects to dismissal of his breach of contract claim for two principal reasons. First, he argues that the contract language permitting ICON to exclude a participant "at any time" does not also allow exclusion for any reason. Pointing to the surrounding language, which refers to specific reasons for exclusion, Williams contends that the contract, taken as a whole, only permits exclusion for medical reasons, technical problems, or the participant's failure to adhere to ICON's rules and requirements for the study. Second, he argues that dismissal of his claim is improper because only the study doctor, the study sponsor, or health authorities are permitted to exclude a participant from the study at any time. And Williams's complaint alleges his exclusion form the study was not effectuated by one of these individuals or entities.

As to Williams's first argument, the court finds that the language of the consent form is ambiguous because it lends itself to two plausible interpretations. *See Layton City v. Stevenson*, 337 P.3d 242, 248 (Utah 2014) ("The language of a contract is ambiguous 'only if it is reasonably susceptible to more than one interpretation.'" (citation omitted)). One reasonable reading of the consent form is that the authority to exclude a participant "at any time" necessarily implies that the exclusion could be for any reason. But another plausible reading of the document is that participants could be removed from the study "at any time," but only for one of the reasons stated in language surrounding the sentence granting the power to remove. *See Sears v. Riemersma*, 655 P.2d 1105, 1107–08 (Utah 1982) ("The primary rule in interpreting a contract is to determine what the parties intended by looking at the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole.").

The court, however, need not resolve this ambiguity at this juncture because Williams's second argument is sufficient to avoid dismissal of his contract claim. The consent form clearly states that participants could be removed by the study doctor (Dr. Sabet), the study sponsor (Gilead Sciences), or health authorities. But the operative complaint alleges that a study nurse and the study coordinator manager informed Williams that he had been removed from the study. ECF No. 32 at ¶ 18. Moreover, Williams alleges that "ICON staff" removed him from the study due to a personal relationship they had with one of the alternates. *Id.* at ¶ 20. Because the allegations of the complaint do not establish that Williams was removed from the study by the study doctor or one of the entities invested with removal power, ICON has not shown that Williams was properly removed from the study under the terms of the consent form contract. Accordingly, the court sustains Williams's objection to the portion of the R&R recommending dismissal of the breach of contract claim.

## II.     OBJECTION TO DISMISSAL OF THE BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

Williams also contends that ICON breached the covenant of good faith and fair dealing by excluding him from the study. He asserts that an implied covenant of the contract prohibited ICON from denying him the benefits of participating in the study by means of a fabricated rationale. The R&R recommends dismissal of this claim because the complainant does not plausibly allege that ICON's stated reason for excluding Williams from the study was false. Williams objects, arguing that he has pled facts supporting his allegation that ICON employees lied about the reason for his exclusion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). A plaintiff must plead sufficient facts to nudge a claim "across the line from conceivable to plausible." *Id.* at 680 (citation omitted).

Williams pleads four facts to support his allegation that ICON staff lied to him about the true reason for his exclusion from the study. Williams alleges that he timely submitted his urine sample to ICON in accordance with the study guidelines, demonstrating that ICON anticipated that the sample would be processed in time for Williams to participate in the study. Williams also asserts that ICON's website states that it conducts 98% of its lab work in-house. Although this fact certainly does not conclusively establish that ICON employees lied about a third-party testing company's delay, it does cast at least some doubt on this claim. Additionally, Williams avers that the second alternate had personal ties to ICON staff and that he was moved ahead of the first alternate to take Williams's place in the study. These facts suggest ICON staff had a motive to lie about the sample processing delay in order to help a friend.

Of course, these facts do not conclusively prove Williams's assertion that ICON staff lied about the true reason he was excluded from the study. But these allegations do provide a sufficient basis for concluding that Williams's theory is plausible. Accordingly, the court sustains Williams's objection to the portion of the R&R recommending that the court dismiss his covenant of good faith and fair dealing claim.

## III.  OBJECTION TO DISMISSAL PRIOR TO DISCOVERY

Williams objects to the dismissal of his claims prior to discovery. He also claims that the consent form contract gives him the right to obtain information regarding the processing of his urine sample. Because Williams will have an opportunity to conduct discovery regarding his

breach of contract and breach of the covenant of good faith and fair dealing claims, this objection is moot.

## IV.   OBJECTION TO DISMISSAL OF THE FRAUDULENT MISREPRESENTATION CLAIM

Williams asserts a fraudulent misrepresentation claim against ICON based on his contention that ICON employees lied to him about the reason that he was dropped from the study. A fraud claim requires:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

*Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 977 n.38 (Utah 2009) (emphasis omitted). The R&R recommends dismissal of this claim because Williams does not allege that he took any action in reliance upon ICON's alleged misrepresentation that caused him harm.

Williams objects to this portion of the R&R, arguing that he has alleged "damages flowing from the misrepresentation, including removal from the study, loss of compensation, and broader exclusion from future participation opportunities." ECF No. 44 at 10. These allegations, however, are not sufficient to support a fraud claim. Fraudulent misrepresentation requires proof that the defendant's misrepresentation induced the plaintiff to take an action that caused harm. The harms that Williams complains of in this lawsuit stem from the unilateral action taken by ICON employees to remove him from the study. Absent any allegation that a falsehood induced Williams to act to his own detriment, his fraud claim fails as a matter of law. The court overrules this objection.

## V.    OBJECTION TO DISMISSAL OF THE § 1981 DISCRIMINATION CLAIM

"Section 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (footnote omitted) (citation omitted). "A prima facie § 1981 claim requires a showing that (1) 'the plaintiff is a member of a protected class,' (2) 'the defendant had the intent to discriminate on the basis of race,' and (3) 'the discrimination interfered with a protected activity as defined in § 1981.'" *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *3 (10th Cir. Feb. 9, 2026) (citation omitted).

Williams, who is black, alleges that ICON discriminated against him in violation of § 1981 by dropping him from the study, denying him the financial benefits of completing the medical trial. In support of his contention that he was excluded from the study due to his race, Williams alleges that ICON gave a false reason for excluding him, suggesting that ICON's employees had an ulterior motive for the exclusion. Williams also alleges that after he was excluded from the study, ICON employees, who were predominantly white, passed over the first alternate, who was from a minority background, and chose the second alternate, who was also white, to fill the newly opened slot.

The R&R argues that Williams failed to plead facts plausibly demonstrating that racial discrimination was the but-for cause of his exclusion from the study. The R&R relies upon its conclusion that Williams did not adequately support his allegation that ICON staff lied to him about the reason for his exclusion from the study. The R&R further reasons that Williams's allegation that ICON employees excluded him because of their friendly relationship with the second alternate contradicts his allegation that racial animus was the root cause of his exclusion.

Williams objects to the R&R's conclusions, arguing that he has pled sufficient facts to plausibly support an inference that his exclusion from the study was animated by racial discrimination.

"[T]o avoid dismissal under Rule 12(b)(6), a § 1981 plaintiff must allege facts plausibly stating a claim that the alleged discrimination was the but-for cause of the alleged interference with a protected activity." *Amarsingh*, 2026 WL 352016, at *3. The court finds that Williams's complaint satisfies this standard. First, as discussed above, the court concludes that Williams has adequately supported his assertion that ICON staff lied about the reason for dropping him from the study. A plausible allegation that ICON staff gave a false explanation for why he was excluded from the study supports an inference that racial animus was the actual reason for ICON's decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("Rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, no additional proof of discrimination is *required.*" (citation modified)). Moreover, the allegation that ICON's predominately white staff passed over the non-white first alternate and gave the study slot to the white second alternate further supports an inference of discriminatory intent. Williams's allegation that the second alternate had a friendly relationship with ICON staff and his allegation that the same staff members removed Williams from the study due to racial discrimination are not mutually exclusive.

The court, therefore, sustains Williams's objection and denies the motion to dismiss to the extent that it seeks dismissal of the § 1981 discrimination claim.

## VI.    OBJECTION TO DISMISSAL OF THE § 1981 RETALIATION CLAIM

Although § 1981 does not expressly prohibit retaliation, this statute has been interpreted to authorize plaintiff to bring retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). "To establish a prima facie case of [§ 1981] retaliation, plaintiff must show that '(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.'" *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1183 (10th Cir. 2002) (citation omitted).

Williams asserts a claim for retaliation under § 1981. In support of this cause of action, Williams alleges that upon learning of his disqualification from the study he "questioned staff about the reasoning behind their decision and expressed concern that the explanation was false and potentially discriminatory." ECF No. 32 at ¶ 22. He asserts that shortly thereafter, ICON banned him from participating in any future clinical studies. The R&R argues that Williams's § 1981 claim should be dismissed for three principal reasons.

First, the R&R asserts that the § 1981 retaliation claim should be dismissed because Williams does not allege facts demonstrating that he engaged in protected opposition to discrimination. The R&R reasons that the allegation that Williams verbally expressed his concern to ICON staff that their actions were "potentially discriminatory" is not sufficient to show opposition to *racial* discrimination. Williams objects to this portion of the R&R, arguing that "[p]rotected activity under § 1981 does not require formal legal terminology." ECF No. 44 at 12.

The court sustains Williams's objection to the R&R's protected opposition argument. Even if Williams made only general allegations of discrimination, there would have been little doubt in the minds of the ICON's staff that Williams was referencing discrimination based on his race.

Thus, Williams plausibly alleged that he engaged in protected opposition to racial discrimination by suggesting to ICON employees that the decision to drop him from the study appeared to be discriminatory.

Second, the R&R asserts that the possible loss of future contract opportunities cannot satisfy the adverse action element of a retaliation claim. In support of this contention, the R&R quotes the following statement from *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001): "[A] § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities." But *Hampton* was a § 1981 discrimination case; not a retaliation case. The language quoted by the R&R merely stands for the proposition that § 1981 prohibits discrimination only in relation to an existing or planned contract in which the plaintiff has or would have rights. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."). To the extent that *Hampton* remains good law in light of *Domino's Pizza*, it is only relevant to a claim of discrimination. The happenstance that Williams alleges that the form of retaliation ICON adopted in this case was a prohibition against future contracts does not mean that this ban was not an adverse action.

Third, the R&R argues that ICON's ban on participation in future research studies is not an adverse action because Williams stated in his complaint that he will not participate in future ICON medical studies. In his Prayer for Relief, Williams requests:

> An order **reinstating Plaintiff's eligibility** to participate in ICON studies across all locations, lifting any bans instituted in retaliation; which further acknowledges that, **Plaintiff has fully decided by his**

> **own will to self exclude himself** from participating in future ICON studies due to irreparable harm and trust to his relationship with Defendant, also caused by Defendant.

ECF 32 at ¶ 51c. The R&R contends that because Williams has disclaimed any interest in doing business with ICON in the future, the ban is a nullity.

The court disagrees. This statement from the complaint is the equivalent of Williams declaring "You can't fire me, I quit!" But as the complaint makes clear, the alleged cause of the irreparable rupture was ICON's discriminatory and retaliatory treatment. Thus, one of the reasons for Williams's nonparticipation in future studies is ICON's allegedly retaliatory ban, which could plausibly support the adverse action and causation elements of a retaliation claim.

For these reasons, the court sustains Williams's objection and does not adopt the R&R's recommendation that the court dismiss the § 1981 retaliation claim.

## VII.   DISMISSAL OF THE REMAINING CLAIMS

Williams does not object to the R&R's recommendation that the court dismiss the claims for (1) negligence and gross negligence and (2) violation of public policy and promissory estoppel. Accordingly, Williams has waived any objection to dismissal of these claims. The court adopts the R&R's recommendation that these claims be dismissed.

## VIII.   OBJECTION TO DISMISSAL WITH PREJUDICE

Because Williams has already had an opportunity to amend his complaint, the R&R recommends that this action be dismissed with prejudice. Williams objects to this recommendation, arguing that dismissal should be without prejudice.

The court sustains this objection. Courts "may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Because Williams has not proposed

any specific amendments, dismissing the remaining claims with prejudice is premature. Moreover, because some of Williams's claims survive dismissal, this litigation will enter the discovery phase. It is conceivable that discovery may uncover facts that may bolster the dismissed claims. Accordingly, dismissal is without prejudice.

Of course, "dismissal without prejudice does not entail automatic leave from the Court to file an amended complaint." *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1039 n.4 (D.N.M. 2015). If Williams wishes to file an amended complaint, he must seek leave from the court and show why any proposed amendments would not be futile.

## CONCLUSION AND ORDER

For the foregoing reasons, the court orders as follows:

1) The court OVERRULES IN PART and SUSTAINS IN PART Williams's objections to the R&R. Accordingly, the court ADOPTS IN PART the R&R. ECF No. 43.

2) The court GRANTS IN PART and DENIES IN PART ICON's motion to dismiss. ECF No. 35. The court grants the motion to the extent that it seeks dismissal of the claims for (1) fraudulent misrepresentation, (2) negligence and gross negligence, and (3) violation of public policy and promissory estoppel. Dismissal is without prejudice. The court denies the motion to dismiss to the extent that it seeks dismissal of the claims for (1) breach of contract and breach of the implied covenant of good faith and fair dealing and (2) discrimination and retaliation in violation of 42 U.S.C. § 1981.

DATED March 31, 2026.

BY THE COURT

Jill N. Parrish
United States District Court Judge

12